WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hildefonso Arcineiga-Rangel, | CIV 15-2172-PHX-DGC (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT COURT:

Petitioner Hildefonso Arcineiga-Rangel has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer (Doc. 11), and Petitioner has filed a reply (Doc. 12).

## BACKGROUND[1]

The following facts are derived from the Arizona Court of Appeals' Memorandum Decision. (Exh. E.)

On the night of July 27, 2004, Petitioner asked his 10-year-old daughter, Lucero H., if she wished to accompany him to the store. Instead of driving to the store, Petitioner pulled the family van into the parking lot of an apartment complex. While parked, Petitioner pulled down Lucero's pants and her underwear and put his hand inside her genital area. Petitioner

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 11 – Respondents' Answer.

1  also tried to lick her genital area and again touched the outside of her genital area. Lucero
2  tried to escape from the van. Because the inside handle to the passenger door was broken, she
3  tried to roll down the window to open the door using the outside handle, but Petitioner
4  stopped her. Lucero's brother, Ruben H., and his friends were walking nearby when they saw
5  the van, walked up to it, shined a flashlight inside, and saw Petitioner sexually assaulting
6  Lucero. Ruben then opened the passenger door and pulled her out.

7  The State charged Petitioner with kidnapping, a class two felony; sexual conduct with
8  a minor, a class two felony; attempted sexual conduct with a minor, a class three felony; and
9  molestation of a child, a class two felony. (Exh. B.) All four charges were alleged to be
10 dangerous crimes against children. (Id.) At trial, the State presented the testimony of the
11 victim, Lucero, as recounted above. (Exh. E.)

12 In addition to Lucero's testimony, Eric R. testified that, on the night of the incident,
13 he, Ruben, and another friend, Lince T., were walking to the park when they noticed
14 Petitioner's van parked in the apartment complex parking lot. (Id. at 3.) Ruben testified that
15 he walked up to the van and took a look inside the passenger window using a flashlight. (Id.)
16 Ruben stated that Lucero's pants were pulled down and that Petitioner was kneeling behind
17 her with his pants partly down. (Id.) After observing this, Ruben opened the passenger door,
18 pulled Lucero out of the van, and began hitting Petitioner. (Id.) Lince testified similarly,
19 asserting that, after Ruben opened the door, he saw Lucero between the front seats with
20 Petitioner behind her. (Id.) Lince averred that Lucero's pants were down. (Id.)

21 Petitioner testified that Lucero had asked to drive the van that night and that he
22 allowed her to drive a few blocks and that it was her idea to park the car at the apartment
23 complex. (Id.) He stated that he had just switched seats with Lucero so that he could drive
24 the rest of the way to the store when Ruben and his friends approached the van. (Id.)
25 Petitioner denied touching Lucero in any sexual way. (Id.)

26 The jury subsequently acquitted Petitioner on the kidnapping charge but found him
27 guilty of sexual conduct with a minor, attempted sexual conduct with a minor, and child
28 molestation. (Id. at 4.) The jury also found Lucero to be under the age of 12 at the time of the

Case 2:15-cv-02172-DGC   Document 13   Filed 04/11/16   Page 3 of 11

1  incident. (Id.) On the charge of sexual conduct with a minor, the court sentenced Petitioner
2  to a mandatory term of life imprisonment with no possibility of release until he has served
3  35 years. (Id.) As to the other two charges, the court imposed a consecutive 10-year sentence
4  for child molestation and lifetime probation for attempted sexual conduct with a minor, to
5  commence upon discharge from prison. (Id.)

6        On July 12, 2005, Petitioner filed a timely notice of appeal from the convictions and
7  sentences. (Exh. C.) Petitioner's counsel subsequently filed a brief in accordance with
8  Anders v. California, 386 U.S. 738 (1967), and State v. Leon, 104 Ariz. 297, 451 P.2d 878
9  (1969), advising the court that, after a diligent review of the record, she could not find any
10 arguable issues to raise on appeal. (Exh. D.) Petitioner was provided the opportunity to file
11 a supplemental *pro se* brief raising any issues, but failed to do so. (Exh. E at 2.)

12       On August 15, 2006, the Arizona Court of Appeals affirmed Petitioner's convictions
13 and sentences. (Exh. E.) On October 31, 2006, that court issued the Order and Mandate after
14 Petitioner did not file either a motion for reconsideration or a petition for review to the
15 Arizona Supreme Court. (Exh. F.)

16       On October 27, 2006, Petitioner filed a timely *pro se* PCR notice (Exh. G), and the
17 trial court appointed counsel (Exh. H). On November 30, 2006, Petitioner filed a second *pro*
18 *se* PCR notice. (Exh. I.) On January 10, 2007, Petitioner's counsel moved to withdraw. (Exh.
19 J.) The court granted the motion permitting counsel to withdraw, and appointed new counsel
20 for Petitioner. (Exh. K.) On April 10, 2007, Petitioner's counsel filed a notice of completion,
21 stating that she could not find any colorable issues to raise on his behalf. (Exh. L.) The court
22 then granted Petitioner additional time to file his own *pro se* PCR petition. (Exh. M.)

23       On July 5, 2007, more than a month after the court's deadline for Petitioner to file his
24 PCR petition and after he had not filed anything, the court dismissed his PCR petition. (Exh.
25 N.) More than a month later, Petitioner filed a request for a Spanish-speaking attorney to
26 represent him in the PCR proceeding. (Exh. O.) The trial court, noting that it had previously
27 dismissed Petitioner's PCR petition for failure to file a timely PCR petition, denied his
28 request. (Exh. P.) Petitioner did not file anything further. (Exh. Q.)

- 3 -

On October 28, 2015, Petitioner filed the instant habeas petition. In his Petition, Petitioner raises one ground for relief alleging that he was convicted based on perjured testimony and that he is actually innocent.

**DISCUSSION**

In their Answer, Respondents contends that Petitioner's habeas petition is untimely and must be dismissed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

"[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A state petition that is not filed, however, within the state's required time limit is not "properly filed" and, therefore, the petitioner is not entitled to statutory tolling. See Pace v. DiGuglielmo, 544

1  U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, 'that [is]
2  the end of the matter' for purposes of § 2244(d)(2)." Id. at 414.

3        A post-conviction petition is "clearly pending after it is filed with a state court, but
4  before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th
5  Cir. 2004). In Arizona, post-conviction review is pending once a notice of post-conviction
6  relief is filed even though the petition is not filed until later. See Isley v. Arizona Department
7  of Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief
8  is also pending during the intervals between a lower court decision and a review by a higher
9  court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold, 536
10 U.S. 214, 223 (2002)). However, the time between a first and second application for post-
11 conviction relief is not tolled because no application is "pending" during that period. See
12 Biggs, 339 F.3d at 1048; see also King v. Roe, 340 F.3d 821 (9th Cir. 2003) (The petitioner
13 was "not entitled to tolling during the interval between the completion of one round of state
14 collateral review and the commencement of a second round of review."). Moreover, filing
15 a new petition for post-conviction relief does not reinitiate a limitations period that ended
16 before the new petition was filed. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.
17 2003).

18       The statute of limitations under AEDPA is subject to equitable tolling in appropriate
19 cases. See Holland v. Florida, 560 U.S. 631, 645-46 (2010). However, for equitable tolling
20 to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2)
21 that some extraordinary circumstances stood in his way'" and prevented him from filing a
22 timely petition. Id. at 648-49 (quoting Pace, 544 U.S. at 418).

23       The Court finds that Petitioner's Petition for Writ of Habeas Corpus is untimely. After
24 trial and sentencing, Petitioner appealed his convictions and sentences to the Arizona Court
25 of Appeals. (Exh. C.) The court of appeals affirmed Petitioner's conviction and sentence on
26 August 15, 2006. (Exh. E.) The court issued its Order and Mandate on October 31, 2006.
27 (Exh. F.)

28

1    However, before the Mandate issued, Petitioner filed a timely PCR notice. (Exh. G.)
2  Because the PCR notice was properly filed, it started tolling AEDPA's 1-year statute of
3  limitation before it started to run. The PCR proceeding was "pending" and tolled AEDPA's
4  statute of limitations until July 5, 2007, when the trial court dismissed the PCR proceedings
5  for failure to file a PCR petition. (Exh. N.) Petitioner did not take any further action in this
6  PCR proceeding. Because nothing was pending after the trial court's decision, the statute of
7  limitations began running the next day – on July 6, 2007. See, e.g., Hemmerle v. Schriro, 495
8  F.3d 1069, 1074 (9th Cir. 2007) (statute of limitations was tolled until date on which notice
9  of post-conviction relief was dismissed where no petition for review was filed). The
10 limitations period continued running uninterrupted for one year – until July 6, 2008 – when
11 it expired.
12   In sum, Petitioner's habeas petition was filed over seven years after the limitations
13 period expired. The habeas petition is therefore untimely.
14   The Ninth Circuit recognizes that the AEDPA's limitations period may be equitably
15 tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United
16 States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other
17 grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998).
18 Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control
19 make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063,
20 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under
21 AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted). "When
22 external forces, rather than a petitioner's lack of diligence, account for the failure to file a
23 timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v.
24 Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must
25 establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some
26 extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also
27 establish a "causal connection" between the extraordinary circumstance and his failure to file
28

a timely petition. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir. 2007).

Petitioner appears to concede that his habeas petition is untimely, and has not proffered any extraordinary circumstance that would justify equitable tolling or demonstrated that an external impediment hindered the diligent pursuit of his rights. And, Petitioner's *pro se* status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. See, e.g., Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."). Petitioner, however, contends that he has newly discovered evidence in the form of recantation testimony, and alleges that under the exception to the statute of limitations for actual innocence, as recognized by McQuiggin v. Perkins, 133 S.Ct. 1924, 1928 (2013), he is entitled to "gateway" through the statute of limitations.

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" to overcome the expiration of the statute of limitations. Id. For Petitioner to meet the actual innocence gateway of Schlup v. Delo, 513 U.S. 298 (1995), the Court must determine, "how reasonable jurors would react to the overall, newly supplemented record," and whether, "it is more likely than not that no reasonable juror would have convicted him." Lee v. Lampert, 653 F.3d 929, 945 (9th Cir. 2011) (quoting House v. Bell, 547 U.S. 518, 538 (2006) and Schlup, 513 U.S. at 327). "This exacting standard permits review only in the 'extraordinary' case, but it does not require absolute certainty about the petitioner's guilt or innocence." Id. at 938 (citations and internal quotations omitted). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324. The Schlup standard "is demanding," McQuiggin, 133 S.Ct. at 1936, and precedents holding that a habeas petitioner satisfied its strictures have typically involved dramatic new evidence of innocence.

1  Here, Petitioner has submitted what appears to be a notarized statement by the victim, his daughter Lucero, recanting her trial testimony and asserting that she had testified against Petitioner because she (who was under the age of 12 at the time of her trial testimony) found out that Petitioner was paying child support and she wanted "revenge." (Doc. 1.) The typed letter is dated June 17, 2006 – a year after Petitioner's trial and sentencing. The letter was then apparently sent to the public defender's office, who received it on June 19, 2006. (Id.)

The record also indicates that prior to receiving the letter, Petitioner's step-son, Ruben, called Petitioner's counsel and recanted his trial testimony stating that he lied because he "wanted his stepfather out of the house temporarily." (Doc. 11, Exh. J.)

Thereafter, the record reflects that Petitioner's counsel moved to withdraw. Then, Petitioner's second appointed counsel, presumably having the information regarding the alleged recantations, nonetheless filed a notice of completion claiming she could not find any colorable claims to raise on Petitioner's behalf.

Initially, the Court notes that assuming the recantations were authentic, said evidence was available a year after Petitioner was sentenced – but before Petitioner's direct appeal became final and before Petitioner filed his PCR notice. Yet, Petitioner waited over nine years to bring the newly-discovered recantation evidence forward in the instant habeas petition – failing to alert the Arizona Court of Appeals and Arizona Supreme Court of the evidence on direct review and completely failing to file a PCR petition.

Moreover, "recantation testimony is properly viewed with great suspicion." Jones v. Taylor, 763 F.3d 1242, 1248 (9th Cir. 2014) (citations omitted). "Recanting testimony is easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial." Id. "It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives ...." Id. Thus, "a witness' later recantation of his trial testimony does not render his earlier testimony false." Id. "Rather, a witness' recantation is considered in addition to his trial testimony and in the context in which he recanted when assessing the likely impact it would have on jurors." Id.

- 8 -

Petitioner asserts his innocence based solely on what the Court sees as questionable recantation testimony – uncorroborated by any other evidence. As such, the Court finds that Petitioner has failed to show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. First, the two recantations, assuming they are genuine, are from Petitioner's family members, which significantly reduce their weight and reliability. See, e.g., House v. Bell, 547 U.S. 518, 552 (2006) (noting that testimony by friends or relations of the accused might have less probative value than testimony from disinterested witnesses); McCray v. Vasbinder, 499 F.3d 568, 573 (6th Cir. 2007) (noting that family members might have a personal stake in a defendant's exoneration). This suspicion "is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon, particularly when family members are involved and the child has feelings of guilt or the family members seek to influence the child to change her story." United States v. Rouse, 410 F.3d 1005, 1009 (8th Cir. 2005) (citations and internal quotations omitted).

Second, the fact that both Lucero and Ruben came forward with their changed version of events at roughly the same time, approximately a year after trial, with absolutely no reason given for the delay, casts further doubt on the veracity of the statements. See, e.g., Herrera v. Collins, 506 U.S. 390, 403-04 (1993); McCray, 499 F.3d at 573 (discounting evidence from witnesses who did not provide a good explanation for why they delayed in coming forward). Here, a reasonable juror could easily believe that family members exerted undue influence on Lucero and Ruben, or that their memory of the events faded or changed since the incident occurred – and for those reasons, credit the testimony that was closer in time to the abuse.

The most that can be said of the new testimony is that it conflicts with some of the evidence presented at trial. Aside from the testimony of Lucero and Ruben, Eric and Lince corroborated the account of incident at issue – with Lince specifically testifying that he saw Lucero between the front seats, with her pants down, and Petitioner behind her.

In sum, even if newly-discovered evidence was presented to a reasonable juror, given the inherent unreliability of such recantation evidence, a reasonable juror could disregard it, and instead rely upon the testimony that was presented at trial.

Accordingly, Petitioner has failed to demonstrate a sufficient showing of actual innocence to excuse his untimeliness.

## CONCLUSION

Having determined that Petitioner's habeas petition is untimely, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure

1 timely to file objections to any factual determinations of the Magistrate Judge will be
2 considered a waiver of a party's right to appellate review of the findings of fact in an order
3 or judgment entered pursuant to the Magistrate Judge's recommendation. <u>See</u> Rule 72,
4 Federal Rules of Civil Procedure.

5   DATED this 11th day of April, 2016.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge