**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hildefonso Arcineiga-Rangel,<br><br>    Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>    Respondents. | No. CV-15-02172-PHX-DGC<br><br>**ORDER** |

On October 28, 2015, Petitioner Hildefonso Arcineiga-Rangel filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. The Court referred the petition to Magistrate Judge Michelle H. Burns. Doc. 5. On April 11, 2016, Judge Burns issued a report and recommendation ("R&R") that the Court dismiss the petition as untimely. Doc. 13. Petitioner filed pro se objections to the R&R. Doc. 14. For the reasons set forth below, the Court will overrule the objections and adopt Judge Burns's recommendation.

**I.    Background.**

    **A.    Petitioner's Conviction.**

The Arizona Court of Appeals provided the following summary of Petitioner's conviction:

> Defendant was charged with kidnapping, a class two felony, sexual conduct with a minor, a class two felony, attempted sexual conduct, a class three felony, and molestation of a child, a class two felony. All four charges were alleged as dangerous crimes against children. At the jury trial the

> State presented, *inter alia*, testimony of victim Lucero H., and witnesses Eric R., Ruben H., and Lince T.
>
> Lucero H., Defendant's ten-year old daughter, testified that on the night of July 27, 2004 Defendant asked if she wished to accompany him to the store. She stated that instead of driving to the store, Defendant pulled the family van into the parking lot of an apartment complex. While parked, Defendant pulled down her pants and her underwear and put his hand on the inside of her genital area. Lucero asserted that Defendant also tried to lick her genital area and again touched the outside of her genital area. . . .
>
> Ruben H. testified that he walked up to the van and took a look inside the passenger window using a flashlight . . . . Ruben stated that Lucero's pants were pulled down and that Defendant was kneeling behind her with his pants partly down. . . . Lince T. testified similarly, asserting that after Ruben opened the door he saw Lucero between the front seats with Defendant behind her. Lince averred that Lucero's pants were down.
>
> Defendant testified in his own behalf. He asserted that Lucero had asked to drive the van that night and that he allowed her to drive a few blocks and that it was her idea to park the car at the apartment complex. He stated that they had just switched seats with Lucero so that he could drive the rest of the way to the store when Ruben and his friends approached the van. He denied touching Lucero in any sexual way.
>
> The jury acquitted Defendant on the kidnapping charge but found him guilty of sexual conduct with a minor, attempted sexual conduct with a minor, and child molestation. The jury also found Lucero to be under the age of 12 at the time of the incident. . . . On the charge of sexual conduct with a minor, the court sentenced Defendant to a mandatory term of life imprisonment with no possibility of release until he has served 35 years . . . . As to the other two charges, the court imposed a consecutive 10-year sentence for child molestation and lifetime probation for attempted sexual conduct with a minor . . . .

Doc. 11-1 at 48-50.

### B.     Statute of Limitations.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for habeas petitions filed by state prisoners. 28 U.S.C. § 2244(d)(1). As relevant here, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A). The limitations period is subject to both statutory and equitable tolling. Statutory tolling is available for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." § 2244(d)(2). Equitable

tolling is available where "extraordinary circumstances beyond a prisoner's control ma[d]e it impossible to file a petition on time." *Roy v. Lampert*, 465 F.3d 964, 968 (9th Cir. 2006).  In addition, a petitioner is entitled to an equitable exception to the AEDPA's statute of limitations if he makes "a credible showing of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

### C. The Petition and the R&R.

Petitioner argues that he is actually innocent, and that he was convicted on the basis of perjured testimony in violation of the Sixth Amendment.  Doc. 1 at 15-16.  To support this claim, Petitioner provides (1) a notarized letter, signed by Lucero, which recants her testimony, and (2) a court filing by Petitioner's PCR counsel describing a phone call she had with Ruben in which Ruben recanted his testimony.  Doc. 1 at 24-26.

Judge Burns recommended that the Court dismiss the petition as untimely. Doc. 13 at 5.  She found that the statute of limitations began to run on July 6, 2007, the day after Petitioner's PCR case was dismissed, and that it ran uninterrupted for one year, until it expired on July 6, 2008.  *Id.*  She determined that Petitioner was not entitled to equitable tolling, because Petitioner did not identify any extraordinary circumstances that prevented him from filing a habeas petition.  *Id.* at 7.  Finally, she determined that Petitioner was not entitled to the actual innocence exception, because a reasonable juror could choose to disregard the recantation evidence and instead rely on the testimony that was presented at trial.  *Id.* at 10.

### D. Petitioner's Objections.

Petitioner does not dispute that his petition is untimely.  Instead, he argues that (1) he is entitled to equitable tolling based on his inability to access a law library, his prior ignorance of the federal habeas remedy, and his lack of English proficiency; and (2) he is entitled to proceed through the actual innocence gateway, or at least have an evidentiary hearing, because the "recantations by two of the state's most important witnesses . . . constitute[] dramatic new evidence of Petitioner's innocence."  Doc. 14 at 3-4, 8.  The Court reviews these objections de novo; the other portions of the R&R will

be adopted without further discussion.  *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

**II.     Analysis.**

**A.      Equitable Tolling.**

A petitioner is entitled to equitable tolling of the statute of limitations if he establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (alterations incorporated).

Petitioner argues that his inability to access a law library and his prior ignorance of the federal habeas remedy constitute extraordinary circumstances.  The Court does not agree.  A petitioner's ignorance of the law is not an extraordinary circumstance. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).  Nor do ordinary prison limitations on access to legal materials constitute an exceptional circumstance. *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).

Petitioner also argues that his lack of English proficiency is an extraordinary circumstance.  "Lack of English proficiency can constitute an extraordinary circumstance for equitable tolling purposes, but only when the petitioner is unable to procure legal materials in his own language or to obtain translation assistance." *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014).  To established extraordinary circumstances based on lack of English proficiency, a habeas petitioner must allege specific, particularized facts showing that he was unable to procure legal materials in his own language or obtain translation assistance during the relevant time period.  *Cf. Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (petitioner did not establish that his inability to access law library was an extraordinary circumstance because he "provided no specificity regarding the alleged lack of access"); *Dennis v. Woodford*, 65 F. Supp. 2d 1093, 1097

- 4 -

(N.D. Cal. 1999) (rejecting petition based on "lack of specific, particularized facts which would make tolling appropriate in this case").

Petitioner alleges that "none of the limited legal materials [that the Arizona Department of Corrections provides] are in Spanish." Doc. 14 at 3. But he does not allege particular facts regarding the duration of the deficiency or the steps he took to try to overcome it. Nor does he allege that he was unable to obtain translation assistance. Petitioner's bare allegation that he was unable to obtain Spanish-language materials is not sufficient to show that extraordinary circumstances precluded a timely filing of his habeas petition.

Even if Petitioner's lack of English proficiency was an extraordinary circumstance, he would be required to show that he diligently pursued his rights, which, in this case, would require him to show that he diligently sought Spanish-language legal materials and translation assistance. *See Mendoza v. Carey*, 449 F.3d 1065, 1071 n.6 (9th Cir. 2006) ("Mendoza's declaration refers to his discouragement at not finding Spanish-language assistance in the prison law library, and refers to his 'finally' obtaining the services of a bilingual inmate. These statements, however, make no reference to the time period in which these actions occurred. Therefore, it is impossible to ascertain on this record whether, during the relevant time period, Mendoza exercised the requisite diligence in his search for Spanish-language materials or a willing translator."). Petitioner has not offered anything to indicate that he was diligent in pursuing his rights during the more than eight years between the start of the limitations period and his filing of the petition. Thus, even if Petitioner's lack of English proficiency qualified as an extraordinary circumstance, his lack of diligence would render him ineligible for equitable tolling.

**B.  Actual Innocence.**

The ADEPA's statute of limitations does not apply to habeas petitions that make "a credible showing of actual innocence." *McQuiggin*, 133 S. Ct. at 1931. To make such a showing, a petitioner must present "new reliable evidence – whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner must show that, if the new evidence had been presented at trial, "it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin*, 133 S. Ct. at 1933 (citing *Schlup*, 513 U.S. at 325) (internal formatting omitted).

The Ninth Circuit has explained that "a habeas petitioner should receive an evidentiary hearing when he makes a good-faith allegation that would, if true, entitle him to equitable tolling." *Roy*, 465 F.3d at 969. The Ninth Circuit has not specifically "articulat[ed] a legal standard regarding when an evidentiary hearing on a gateway *Schlup* claim is required." *Stewart v. Cate*, 757 F.3d 929, 941 (9th Cir. 2014). It is clear, however, that courts are entitled to consider "how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332.

Petitioner has produced two documents to support his claim of actual innocence. The first is a notarized letter from the victim, dated June 17, 2006. Doc. 1 at 24. The letter states:

> my father never really did any thing [sic] that will hurt me or any one else. I made every thing I said up, he never pulled my pants down and tried to lick me or anything else we said that happened. . . . The reason I or we lied on my father is to get revenge, to make him suffer. But I feelk [sic] he has suffered enough so im [sic] telling the truth. The reason I wanted to get revenge is becouse [sic] I found out he was paying child support. I got the idea from the news just incase [sic] you need that information.

*Id.*

The second document is a court filing, dated January 10, 2007, in which Petitioner's PCR counsel describes a phone call in which Ruben recanted his testimony. *Id.* at 26. In the filing, counsel seeks leave of the court to withdraw as Petitioner's attorney because he expects to be called as a witness in any evidentiary hearing:

> Ruben, Defendant's stepson and the primary witness for the State, called counsel and informed her that he had lied during the trial and that he had not seen the victim with her pants pulled down. He had apparently been under the impression that Defendant might go to prison for six months or so, and he wanted his stepfather out of the house temporarily.

- 6 -

*Id.*

The Court concludes that this evidence is not sufficiently reliable to warrant an evidentiary hearing, for several reasons.

First, as the Ninth Circuit has recognized, recantation testimony is inherently suspect:

> As a general matter, recantation testimony is properly viewed with great suspicion. Recanting testimony is easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives.

*Jones v. Taylor*, 763 F.3d 1242, 1248 (9th Cir. 2014) (citations, quotation marks, and brackets omitted). This skepticism "is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon, particularly when family members are involved and the child has feelings of guilt or the family members seek to influence the child to change her story." *United States v. Rouse*, 410 F.3d 1005, 1009 (8th Cir. 2005).

Second, the fact that the recantations in this case are from Petitioner's family members "reduces their weight and reliability." *Jones*, 763 F.3d at 1249; *see also House v. Bell*, 547 U.S. 518, 552 (2006) (noting that testimony by friends or relations of the accused might have less probative value than testimony from disinterested witnesses); *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (noting that family members might have a personal stake in a defendant's exoneration).

Third, the recantations occurred at about the same time, in June of 2006 and January of 2007. The Ninth Circuit has expressed concern when witnesses come forward "with changed stories at roughly the same time." *Jones*, 763 F.3d at 1249.

Fourth, the recantations, which are now more than nine years old, were available to Petitioner before his direct appeal became final and before the commencement of PCR

- 7 -

proceedings. The PCR court was also aware of the evidence of Ruben's recantation. Yet Defendant's second PCR counsel filed a notice stating that she could not find any colorable claims, Petitioner did not file his own brief on the issue, and the court dismissed the petition. If the recantations were genuine and accurate, surely Petitioner and his counsel would have developed additional evidence to document them and made every effort to present them to the PCR court. And surely Petitioner would not have waited many more years to present his innocence claim to this Court.

Fifth, the fact that neither of the recanting witnesses – both of whom are Petitioner's family members – appears to have made any effort to exonerate Petitioner in the intervening nine years suggests that the recantations are false. Surely if the witnesses were convinced of Petitioner's innocence they would have done more to exonerate him.

Sixth, the Court notes that one of the witnesses who testified against Petitioner at trial – Lince T. – has never recanted his testimony. Lince's unrecanted testimony directly contradicts the new claims of the Lucero and Ruben that Lucero's pants were not down. *See* Doc. 11-1 at 49 ("Lince T. testified similarly, asserting that after Ruben opened the door he saw Lucero between the front seats with Defendant behind her. Lince averred that Lucero's pants were down.").

Claims of actual innocence must be considered carefully, especially in this day when science-based exonerations are becoming more common. But given the foregoing doubts about Petitioner's evidence, the Court cannot conclude that he has presented "new reliable evidence," *Schlup*, 513 U.S. at 324, nor evidence sufficient to show that "it is more likely than not that no reasonable juror would have convicted" him. *McQuiggin*, 133 S. Ct. at 1933 (citing Schlup, 513 U.S. at 325) (internal formatting omitted).

**IT IS ORDERED:**

1. Magistrate Judge Michelle H. Burns's R&R (Doc. 13) is **accepted**.
2. The Petition for writ of habeas corpus (Doc. 1) is **denied** with prejudice.

3.  The Clerk of the Court is directed to **terminate** this action.

Dated this 23rd day of May, 2016.

_____
David G. Campbell
United States District Judge

- 9 -